UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIG INSURANCE COMPANY,

    Plaintiff,

v.

STRYKER CORPORATION, et al.,

    Defendants.
                              /

File No. 1:09-CV-156

HON. ROBERT HOLMES BELL

**O P I N I O N**

The motions before the Court arise under three related actions. Each of the three actions involves claims for indemnification by Stryker Corporation ("Stryker") and its subsidiary, Howmedica Osteonics Corporation ("Howmedica"), from their insurers for third-party claims related to defective Duracon Uni-Knee products ("DUK Claims"). The insurers are Defendant XL Insurance America, Inc. ("XLIA"), formerly known as Winterthur International America Insurance Company, National Union Fire Insurance Company of Pittsburgh ("National Union"), and Plaintiff TIG Insurance Company ("TIG"). The three actions are:

(1)    *Stryker v. XLIA*, No. 4:01-cv-157 (*Stryker I*), in which Stryker sought indemnification from XLIA and National Union for DUK Claims brought against Stryker. Plaintiff TIG is not a party to this action.

(2)    *Stryker v. XLIA,* No. 1:05-cv-51 (*Stryker II*), in which Stryker sought indemnification from XLIA, National Union, and TIG for DUK Claims brought against Pfizer, Inc. ("Pfizer"). Stryker is contractually obligated to defend and indemnify these claims

pursuant to an Asset Purchase Agreement, and Pfizer brought suit against Stryker to enforce these obligations in *Pfizer v. Stryker*, No. 02-cv-8613 (S.D.N.Y.).

(3)  *TIG v. Stryker*, No. 1:09-cv-156 (*Stryker III*), in which TIG seeks a declaratory judgment against Stryker and XLIA that: (i) it is not liable to Stryker until the underlying insurance obligations have been exhausted, and (ii) the underlying insurance obligations have not been exhausted.

TIG is an excess liability insurer for Stryker. In *Stryker I*, Stryker sought indemnification from XLIA, one of Stryker's primary liability insurers, for DUK Claims brought against Stryker. On December 15, 2008, the Court issued a partial judgment against XLIA for Stryker's costs of settling and defending these claims.[1] (*Stryker I*, Dkt. No. 1056.) In *Stryker II*, Stryker sought indemnification from XLIA for the judgment against Stryker in *Pfizer v. Stryker*, Pfizer's action against Stryker for indemnification of DUK Claims brought against Pfizer. In *Stryker II*, Stryker also sought declaratory relief against TIG, asking the Court to declare that the final judgment in *Pfizer v. Stryker*, combined with XLIA's liabilities for the DUK Claims in *Stryker I,* would exhaust XLIA's policy limits such that TIG would be liable for losses in excess of XLIA's policy. On January 8, 2009, the Court issued an amended opinion in *Stryker II* granting Stryker's claim for declaratory relief against TIG. (*Stryker II*, Dkt. No. 161.) On February 5, 2009, XLIA filed a motion for partial summary judgment and declaratory relief in both *Stryker I* and *Stryker II*, contending that its policy has been exhausted by payment of a settlement to Pfizer to satisfy the judgment in *Pfizer v. Stryker* and asking the Court to hold that it is not liable for the portion of the judgment in

---

[1] The judgment was partial because a portion of the defense costs remained in dispute.

2

*Stryker I* that exceeds its policy limits.

In this action, *Stryker III*, TIG seeks a declaratory judgment that its policies "are not at issue until the Underlying Insurance is exhausted" and that "the Underlying Insurance is not exhausted." (Dkt. No. 1, Compl. ¶ 39.) The motions before the Court in this action are motions to dismiss filed by Defendant XLIA (Dkt. No. 6), and by Defendants Howmedica and Stryker (Stryker and Howmedica will be referred to, collectively, as "Stryker") (Dkt. No. 15). Defendant XLIA argues that TIG's claims in this action should be dismissed or consolidated with *Stryker II* because TIG's claims should be addressed in *Stryker II*. Defendant Stryker argues that the claims should be dismissed because they should have been pleaded as compulsory counterclaims in *Stryker II* and because they are barred by *res judicata* or claim preclusion. For the reasons that follow, Defendants' motions will be granted.

The Court agrees that the claims raised in this action should have been raised as compulsory counterclaims in *Stryker II*. Rule 13(a) of the Federal Rules of Civil Procedure requires a party to plead as a counterclaim any claim against an opposing party that a party "has against an opposing party" and that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Fed. R. Civ. P. 13(a). Rule 13(a) is satisfied because TIG's claims arise out of the same policies at issue in *Stryker II* and do not require adding another party. TIG's complaint indicates that it relates to its policies issued to Stryker for the years 1999 and 2000. (Dkt. No. 1, Compl. ¶¶ 13,14.) In *Stryker II*, Stryker

3

sought coverage from TIG under the same policies. (*Stryker II*, Dkt. No. 70, 3d Am. Compl. ¶ 14.) In *Stryker III*, TIG seeks a declaratory judgment that: (i) it is not liable to Stryker until the underlying insurance is exhausted, and (ii) the underlying insurance has not been exhausted. (*Id.* at ¶ 39.) Stryker's amended complaint in *Stryker II* sought a declaratory judgment that the DUK Claims against Stryker, as well as Pfizer's claims in *Pfizer v. Stryker*, "will exhaust the limits of the XLIA policies" and that "TIG has an obligation to cover any loss in excess of the primary umbrella policies." (*Id.* at ¶ 39.) Thus, TIG's declaratory judgment claim is nearly a mirror image of Stryker's declaratory judgment claim against TIG in *Stryker II*. Finally, the Court notes that TIG asserted as a defense in *Stryker II* that "[t]he purported claims against the Plaintiffs for which they seek coverage will not exhaust all available underlying insurance." (*Stryker II*, Dkt. No. 81, TIG's Answer to 3d Am. Compl. ¶ 4.)

Where Rule 13(a) applies to a claim that should have been raised in another pending federal action, a Court "will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action." 6 Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1418 (West 2009). Thus, the Court will dismiss this action, but will consider whether to grant TIG leave to plead it in *Stryker II*.

The Sixth Circuit has indicated that compulsory counterclaims raised in a second action may be barred by doctrines of waiver, issue preclusion, or claim preclusion. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 662-63 (6th Cir. 1995) (noting a preference for the flexibility

4

of waiver analysis). Stryker contends that TIG's claims are barred by claim preclusion. The parties cite Michigan law with respect to claim preclusion; however, in determining the preclusive effect of a prior federal court decision, the Court applies federal law. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006). Nevertheless, the federal law requirements for claim preclusion are substantially similar to those cited by the parties:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Id.* The second and fourth elements are clearly satisfied.[2] TIG was a party to *Stryker II* and there is an identity of the causes of action. TIG challenges Defendants' claim preclusion argument only on the basis that the claims in this action were not or could not have been resolved in *Stryker I* or *Stryker II*. TIG's arguments are not persuasive. TIG contends that coverage under its policy is not implicated because the underlying insurance has not been exhausted. TIG points to "Other Insurance" and "Underlying Insurance" provisions in its policy that purport to require the exhaustion of other insurance policies providing coverage to Stryker before TIG's policy is implicated. TIG argues that a policy issued by National Union for the 1999 policy year is part of the underlying insurance that must be exhausted before coverage under its policy is implicated. It contends that neither *Stryker I* nor *Stryker II* addressed the issue of allocation of liability to National Union's policy.

---

[2] The court is less certain that the first element, a "final adjudication on the merits" has been satisfied because, while the Court has granted summary judgment on Stryker's claims against TIG, the Court has not yet issued a final judgment in *Stryker II*.

5

In *Stryker I*, the Court determined that, as between XLIA's 2000 policy and National Union's 1999 policy, the Court would apply a pro rata "time on the risk" method of allocating coverage, consistent with Michigan law for allocating coverage for continuous injuries occurring over multiple policy years. (*Stryker I*, Dkt. No. 685, 07/01/2005 Op. 6-18.) The Court then dismissed National Union as a defendant, determining that National Union was not obligated to provide coverage because Stryker had not shown that its claims exceeded the self-insured retention limits of the National Union policy. (*Id.* at 21-22.) The Court declined to consider the DUK Claims against Pfizer as part of its analysis. (*Id.* at 18.) In a subsequent opinion, the Court determined that XLIA's policy provided "batch" coverage for all the DUK Claims arising out of a batch, if bodily injury occurred after January 1, 2000. (*Stryker I*, Dkt. No. 916, 04/03/2007 Op. 11.) The purpose of this type of coverage was to allow Stryker to compress claims into one policy year without having to exhaust multiple policy limits over multiple years. (*Id.* at 9.)

Stryker argues that the Court's batch-coverage ruling obviated the need for allocation of damages to National Union's policy. However, the finding that XLIA's 2000 policy provides coverage for all the DUK Claims at issue in *Stryker I* under one policy year does not necessarily mean that National Union's policy does not also provide overlapping coverage. If TIG's policy requires exhaustion of all of Stryker's insurance policies providing coverage for the DUK Claims, then the issue of allocation to National Union's policy may be relevant to the question of coverage by TIG's policy. Moreover, while the Court

determined that National Union's policy did not provide coverage for the claims in *Stryker I*, the Court did not address coverage under National Union's policy for the DUK Claims at issue in *Stryker II*.

TIG contends that, because it was not a party to *Stryker I*, it could not raise the issue of allocation of liability in that action. However, in *Stryker II*, Stryker sought a declaratory judgment on TIG's liability for coverage of all DUK Claims, including those at issue in *Stryker I* and *Stryker II*, both in its amended complaint and in its motion for summary judgment against TIG. (*See Stryker II*, Dkt. No. 95, Pl.'s Mot. for Summ. J. 7-8.) Thus, if the Court has not addressed TIG's belated exhaustion arguments, it is because TIG did not raise them in *Stryker II*. TIG asserted as an affirmative defense in its answer in that action that Stryker's claims would not exhaust all underlying insurance. (*Stryker II*, Dkt. No. 81, Answer to Third Am. Compl. 19.) However, in response to Stryker's motion for summary judgment, TIG conceded that its policy followed the form of the XLIA policy, and asserted that "issues presented as to whether coverage under the TIG Policy is triggered . . . turn *solely* on interpretation of the underlying 2000 XLIA Policy." (*Stryker II,* Dkt. No. 107, Def. Br. in Opp'n to Summ. J. 3.) In other words, TIG did not assert that any policies other than XLIA's policy needed to be exhausted in order for it to be liable as the excess insurer. TIG cannot raise new arguments that it could have raised in *Stryker II* on issues that have already been adjudicated in *Stryker II*. TIG offers no valid explanation as to why it could not have raised its claims in this action in response to Stryker's declaratory judgment claim in *Stryker II* prior to the Court's summary judgment ruling against TIG in that action.

Even assuming that TIG's claims are not barred by waiver or claim preclusion, the Court would not allow XLIA to plead its declaratory judgment claims as counterclaims in *Stryker II* because it appears that they would be redundant and would serve no useful purpose. *See* 6 Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1406 (West 2009) (noting that "when the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, a party might challenge the counterclaim on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for a declaratory judgment moot. This would be true if defendant is adequately protected in terms of the ability to have the issues that are raised by the request for declaratory relief fully adjudicated.") As the Court has noted, TIG's declaratory judgment claims in this action are nearly the mirror image of Stryker's declaratory judgment claims in *Stryker II*. TIG has had the opportunity, in *Stryker II*, to fully adjudicate the issues raised in *Stryker III* in response to Stryker's declaratory judgment claim.

Finally, the Court notes that in *Stryker II* Stryker sought a declaratory judgment only as to the issue of exhaustion; it did not seek a specific amount of damages against TIG. Thus, if any issue remains unresolved as to TIG, it is the amount of Stryker's claims that are in excess of XLIA's policy for which TIG may be liable. Nevertheless, the issues raised by TIG in *Stryker III* regarding the allocation of damages to another policy year could have and should have been raised in *Stryker II* prior to the Court's grant of summary judgment in favor

8

of Stryker in that action. For the foregoing reasons, the Court will grant Defendants' motions and will dismiss this action without consolidation with, or leave to plead it in, *Stryker I* or *Stryker II*. An order will be entered that is consistent with this opinion.


Dated: October 7, 2009                     /s/ Robert Holmes Bell
                                                                   ROBERT HOLMES BELL
                                                                   UNITED STATES DISTRICT JUDGE